IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| RODNEY W. DEVINE, #210 298, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:12-CV-862-SRW |
| | ) | [WO] |
| WARDEN LEEPOSEY DANIELS, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

In this 42 U.S.C. § 1983 action, Plaintiff, a state inmate incarcerated at the Elmore
Correctional Facility when he filed the complaint, claims that Defendants unnecessarily required
him to take medication for exposure to Tuberculosis ["TB"] despite his previously having
undergone treatment for TB at the St. Clair Correctional Facility.[1] Plaintiff further alleges that
Warden Daniels failed in his responsibility as overseer of the prison to ensure that Plaintiff
received appropriate and adequate medical care from medical personnel, and that medical
personnel, in addition to re-treating him for TB exposure, also discontinued his prescription
medication and follow up visits. Named as defendants are Warden Leeposey Daniels, Warden
Leon Bolling, Captain Charles McKee ["correctional defendants"], Mr. Ellis, Ms. Kornett, and
Mrs. Copeland ["medical defendants"]. Plaintiff seeks declaratory relief, damages for pain,
suffering, and negligence, costs, and attorney's fees. He also requests trial by jury.[2] *Doc. Nos.*
*10, 17, 24, 25.*

---

[1] During the pendency of this action Plaintiff was transferred from the Elmore Correctional Facility to
another ADOC penal institution.

[2] In accordance with the prior orders of the court, this action is proceeding on Plaintiff's amended
complaint filed on November 15, 2012, and parts of the amendments thereto. *See Doc. Nos. 10, 17, 24,*
*25, 26.*

Defendants filed answers, special reports, and supporting evidentiary materials addressing Plaintiff's claims for relief. *Doc. Nos. 22, 23, 34, 35.* In these documents, Defendants deny that they acted in violation of Plaintiff's constitutional rights. The medical defendants also assert that Plaintiff's claims against them are due to be dismissed because he failed to exhaust properly an administrative remedy available to him through the prison system's medical care provider regarding the medical claims in this cause of action prior to filing this action. *Doc. No. 34; Sagers-Copeland Affidavit, Exh. A.* The court granted Plaintiff an opportunity to file a response to Defendants' reports in which he was advised, among other things, to "specifically address the medical defendants' argument that he [ ] failed to exhaust his available administrative remedies as required by 42 U.S.C. § 1997e(a) of the Prison Litigation Reform" prior to filing this federal civil action. *Doc. No. 36* at 1 (footnote omitted).

"[A]n exhaustion defense ... is not ordinarily the proper subject for a summary judgment; instead it 'should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment.'" *Bryant v. Rich*, 530 F.3d 1368, 1374-1375 (11th Cir. 2008)(quoting *Ritza v. Int'l Longshoremen's & Warehousemen's Union*, 837 F.2d 365, 368–369 (9th Cir.1988).The court deems it appropriate to treat the medical defendants' report as a motion to dismiss, and to treat the correctional defendants' report as a motion for summary judgment. This case is now pending on Defendants' dispositive motions.

## I.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007)

(*per curiam*) (citation to former rule omitted); Fed.R.Civ.P. Rule 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Jeffery v. Sarasota White Sox, Inc*., 64 F.3d 590, 593 (11th Cir. 1995) (moving party has initial burden of showing there is no genuine dispute of material fact for trial). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing the nonmoving party has failed to present evidence to support some element on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-324.

The correctional defendants have met their evidentiary burden. Thus, the burden shifts to Plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required [by citing to materials in the record including affidavits, relevant documents or other materials] the court may ... grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it."); *Jeffery*, 64 F.3d at 593-594 (internal quotation marks omitted) (Once the moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or sworn statements], or by depositions, answers to interrogatories, and admissions on file," demonstrate that there is a

genuine dispute of material fact.). This court will also consider "specific facts" pled in a plaintiff's sworn complaint when considering his opposition to summary judgment. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014). A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Public Education for Bibb County*, 495 F.3d 1306, 1313 (11th Cir. 2007).

> In civil actions filed by inmates, federal courts
>
> must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citation omitted). Consequently, to survive Defendants' properly supported motions for summary judgment, Plaintiff must produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims for relief. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Rule 56(e), *Federal Rules of Civil Procedure*. "If the evidence [on which the nonmoving party relies] is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-250 (internal citations omitted). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990). Conclusory allegations based on subjective beliefs likewise cannot create a genuine issue of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (plaintiff's "conclusory assertions ..., in the absence of

[admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond his own conclusory allegations challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment...."). Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 323 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (If on any part of the *prima facie* case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Dept. of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003). To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show

that there is some metaphysical doubt as to the material facts... . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. Ltd., v. Zenith Radio Corp*., 475 U.S. 574, 586-87 (1986) (internal citations omitted).  In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and establishes the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-324 (Summary judgment is appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine dispute as to a requisite material fact.); *Waddell v. Valley Forge Dental Associates, Inc*., 276 F.3d 1275, 1279 (11th Cir. 2001) (to establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor.).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *See Beard*, 548 U.S. at 525; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case.  Here, Plaintiff has failed to demonstrate a requisite genuine dispute of material fact against the correctional defendants to preclude summary judgment. *Matsushita*, *supra*.

## II. DISCUSSION

*A. The Medical Defendants*

*i. Exhaustion*

"When deciding whether a prisoner has exhausted his remedies, the court should first consider the plaintiff's and the defendants' versions of the facts, and if they conflict, take the plaintiff's version of the facts as true. 'If in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed.' *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008) (*citing Bryant*, 530 F.3d at 1373–74). If the complaint is not subject to dismissal at this step, then the court should make 'specific findings in order to resolve the disputed factual issues related to exhaustion.' *Id.* (*citing Bryant*, 530 F.3d at 1373–74, 1376)." *Myles v. Miami-Dade County Correctional and Rehabilitation Dept.*, 476 Fed.Appx. 364, 366 (11th Cir. 2012).

Plaintiff complains that the medical defendants discontinued necessary medication and follow up visits and required him to undergo a second treatment for exposure to TB without proof that he had been re-exposed. *Doc. Nos. 17, 24, 25.* The medical defendants deny that they provided Plaintiff with constitutionally inadequate or deficient medical care and argue that Plaintiff's claims should be dismissed because he failed to exhaust the administrative remedy provided by the institutional medical care provider prior to filing this complaint as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a). As explained above, federal law directs this court to treat the medical defendants' response as a motion to dismiss for failure to exhaust an administrative remedy and allows the court to look beyond the pleadings to relevant evidentiary materials in deciding the issue of proper exhaustion. *Bryant*, 530 F.3d at 1375.

The Prison Litigation Reform Act compels exhaustion of available administrative remedies before a prisoner can seek relief in federal court on a § 1983 complaint. Specifically, 42 U.S.C. § 1997e(a) states that "[n]o action shall be brought with respect to prison conditions

under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." "Congress has provided in § 1997(e)(a) that an inmate must exhaust irrespective of the forms of relief sought and offered through administrative remedies." *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Exhaustion of all available administrative remedies is a precondition to litigation and a federal court cannot waive the exhaustion requirement. *Booth*, 532 U.S. at 741; *Alexander v. Hawk*, 159 F.3d 1321, 1325 (11th Cir. 1998); *Woodford v. Ngo*, 548 U.S. 81 (2006). Moreover, "the PLRA exhaustion requirement requires proper exhaustion." *Id*. at 93 (emphasis added). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules [as a precondition to filing suit in federal court] because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings.... Construing § 1997e(a) to require proper exhaustion ... fits with the general scheme of the PLRA, whereas [a contrary] interpretation [allowing an inmate to bring suit in federal court once administrative remedies are no longer available] would turn that provision into a largely useless appendage." *Id*. at 90-91, 93. The Court reasoned that because proper exhaustion of administrative remedies is necessary an inmate cannot "satisfy the Prison Litigation Reform Act's exhaustion requirement ... by filing an untimely or otherwise procedurally defective administrative grievance or appeal[,]" or by effectively bypassing the administrative process simply by waiting until the grievance procedure is no longer available to him. *Id.* at 83-84; *Johnson v. Meadows*, 418 F.3d 1152, 1157 (11th Cir. 2005) (inmate who files an untimely

grievance or simply spurns the administrative process until it is no longer available fails to satisfy the exhaustion requirement of the PLRA). "The only facts pertinent to determining whether a prisoner has satisfied the PLRA's exhaustion requirement are those that existed when he filed his original complaint." *Smith v. Terry*, 491 Fed.Appx. 81, 83 (11th Cir. 2012) (*per curiam*).

According to defendants, the health care provider for the Alabama Department of Corrections has a grievance procedure for inmate complaints related to the provision of medical treatment. Inmates may voice complaints regarding any medical treatment sought or received during their incarceration. The grievance process is initiated when an inmate submits a medical grievance form to the Health Services Administrator ["HSA"] through the institutional mail system. The HSA reviews the grievance and returns the form to the inmate with a written response at the bottom within approximately five days of receipt of the medical grievance. The grievance form contains a notation apprising inmates that if they wish to appeal the initial response, they may request a grievance appeal form from the HSA.  The notation further directs inmates to return the completed grievance appeal form to the attention of the HSA by placing the form in the sick call request boxes located throughout the facility or by giving it to the segregation sick call nurse on rounds. *Doc. No.22, Lampley-Copeland Affidavit Exh. A.*

Defendant Sagers-Copeland is the HSA at the Staton Correctional Facility. The medical staff at Staton also provides medical services to inmates at the Elmore Correctional Facility. At the time of the actions about which Plaintiff complains, Defendant Sagers-Copeland addressed inmate grievances regarding their medical care. Defendant Sagers-Copeland affirms that inmate grievances are her responsibility. After reviewing Plaintiff's medical records, Defendant Sagers-Copeland determined that Plaintiff filed four medical grievances during his incarceration. Only

one of Plaintiff's grievances concerned his treatment for TB. Defendant Sagers-Copeland responded to this grievance. Plaintiff also filed a grievance regarding his prescription for Plavix and Defendant Sagers-Copeland responded that an appointment would be made to discuss his grievance; that appointment occurred on February 7, 2012. Defendant Sagers-Copeland indicates that Plaintiff filed no medical grievance appeals from the responses he received or otherwise noted his disagreement or misunderstanding regarding her responses. *Doc. No. 34, Sagers-Copeland Affidavit; Doc. No. 22, Plaintiff's Medical Records, Exh, 1 – Part I* at 4-7, 30.

The court granted Plaintiff an opportunity to respond to the exhaustion defense raised by the medical defendants in their motion to dismiss. *Doc. No. 36*. In his response, Plaintiff presents a futility argument contending that he "is not required to complain after his grievance has been addressed but not corrected." *Doc. No. 41* at 2-3. As explained, however, the PLRA's exhaustion requirement contains no futility exception when a grievance procedure is available. *Booth*, 532 U.S. 741 n.6; *Cox*, 332 F.3d at 425.

The medical defendants' evidence establishes that the Elmore Correctional Facility provides a procedure for inmates who wish to submit a grievance regarding medical treatment and care sought or provided. Inmate grievance forms are available to inmates to submit a grievance related to the provision of health care, they are answered within a designated time frame, and the inmate grievance form provides information about how an inmate may appeal the response he receives to his initial inmate grievance. Plaintiff's evidence has not successfully rebutted defendants' showing that a grievance process was available at Elmore during the time of his incarceration. Plaintiff's belief that exhaustion of the grievance procedure was futile fails to overcome the medical defendants' evidence showing that a grievance system was available at

the institution for Plaintiff's claims and that he failed to exhaust properly the administrative remedy available to him.

Based on the evidence in the record, the court finds that Plaintiff failed to exhaust the grievance procedure provided at the Elmore Correctional Facility properly. Plaintiff filed no appeal of the medical grievances he submitted at the institution regarding the allegations made in the amendments to the amended complaint in accordance with the facility's grievance procedure, and he has presented nothing to justify his failure to exhaust this administrative remedy. The court, therefore, concludes that Plaintiff's claims against the medical defendants are due to be dismissed, as Plaintiff failed to exhaust an available administrative remedy.

B.  The Correctional Defendants

i. Deliberate Indifference[3]

Plaintiff complains that he was subjected to cruel and unusual punishment when he had to undergo treatment for TB even though he previously underwent INH treatment for TB at the St. Clair Correctional Facility. Plaintiff further alleges that Defendant Daniels, whom he contends oversees prison operations which include ensuring that inmates receive proper medical care, allowed prison medical staff to administer INH medication in triple doses twice a week for their convenience rather than daily dosing which caused him "overdose" symptoms.  *Doc. Nos. 10, 17 (Attachment 1), 24, 25.*

---

[3] In addition to alleging that Defendants violated his rights regarding his medical care and treatment under the Eighth and Fourteenth Amendments, Plaintiff also asserts that Defendants violated his Fifth and Ninth Amendment rights.  *Doc. Nos. 17 (Attachment 1), 25.*  Plaintiff, however, fails to explain how either the Fifth or Ninth Amendment supports his claims, and it does not appear his claims are properly asserted under these amendments. *See Buxton v. Plant City*, 871 F.2d 1037, 1041 (11th Cir. 1989) ("The Fifth Amendment of the United States Constitution restrains the federal government, and the Fourteenth Amendment, Section 1, restrains the states from depriving any person of life, liberty or property without the due process of law."); *see also Curry-Bey v. United States*, 2001 WL 1103230 (S.D.Fla. Aug. 6, 2001) (dismissing Ninth Amendment claim for failure to state a claim where plaintiffs did not "cite any unenumerated right on which they base[d] their Ninth Amendment claim").

The court's analysis of whether Plaintiff has stated an Eighth Amendment claim has two components. "First, the deprivation alleged must be, objectively, 'sufficiently serious[;]' a prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities [.]' " *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal citations omitted).  For a claim, like the instant one, based upon a failure to control the spread of a contagious disease, Plaintiff must present factual allegations which show that he was incarcerated under conditions posing a substantial risk of serious damage to his health. *Helling v. McKinney*, 509 U.S. 25, 35 (1993). The second component of Plaintiff's Eighth Amendment claim is that the "prison official must have a 'sufficiently culpable state of mind[,]'" *Farmer*, 511 U .S. at 834 (citations omitted), since " 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.' " *Id*. (citation omitted). In conditions-of-confinement cases "that state of mind is one of 'deliberate indifference' to inmate health or safety[.]" *Id*. (citations omitted). "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*.  at 837.

The conduct at issue "must involve more than ordinary lack of due care for the prisoner's interests or safety... . It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

> To be deliberately indifferent, Defendants must have been "subjectively aware of
> the substantial risk of serious harm in order to have had a "'sufficiently culpable

state of mind."'" *Farmer*, 511 U.S. at 834-38, 114 S.Ct. at 1977-80; *Wilson v. Seiter*, 501 U.S. 294, 299, 111 S.Ct. 2321, 2324-25, 115 L.Ed.2d 271 (1991).... Even assuming the existence of a serious risk of harm and legal causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists - and the prison official must also "draw that inference." *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003). "The known risk of injury must be a strong likelihood, rather than a mere possibility before a [state official's] failure to act can constitute deliberate indifference." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (citations and internal quotations omitted). Thus, "[m]erely negligent failure to protect an inmate ... does not justify liability under section 1983... ." *Id.*

Under the aforementioned criteria, Plaintiff is "required to produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation[]" in order to survive summary judgment on his deliberate indifference claim against the defendants. *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir. 1995); *Farmer*, 511 U.S. at 837-838 (To circumvent entry of summary judgment on a properly supported motion, plaintiff must produce sufficient evidence which demonstrates (1) an objectively substantial risk of serious harm; (2) a subjective awareness of this risk by the defendants; (3) the defendants responded to such risk in an objectively unreasonable manner; and (4) the actions/omissions of the defendants caused his injuries); *Marsh*, 268 F.3d at 1028-1029 (same); *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1191 n.28 (11th Cir.1994), *overruled in part on other grounds by Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (recognizing that the Supreme Court has defined "deliberate indifference" as requiring more than mere negligence and has adopted a "subjective recklessness" standard from criminal law); *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999) (holding that for liability to attach, defendant

must know of and then disregard an excessive risk to prisoner's health or safety); *Qian v. Kautz*, 168 F.3d 949, 955 (7th Cir.1999) (stating "deliberate indifference" is a synonym for intentional or reckless conduct, and that "reckless" conduct describes conduct so dangerous that deliberate nature can be inferred). Thus, deliberate indifference occurs only when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511 U.S. at 837. Furthermore, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Id.* at 838.

Defendants deny that they acted in violation of Plaintiff's constitutional rights. *See Doc. No. 22, Daniels, Bolling, and McKee Affidavits*. Defendants provided the affidavit of Dr. Dyjerlynn Lampley-Copeland, Medical Director and Site Physician for Staton Correctional Facility, who also provides medical attention and treatment to inmates incarcerated at the Elmore Correctional Facility. Dr. Lampley-Copeland addressed the claims presented by Plaintiff :

> 11.  In his Complaint, Mr. Devine specifically disputes the method of treatment prescribed for his TB. TB is an infection with the bacterium Mycobacterium tuberculosis, which most commonly affects the lungs, but can also affect the central nervous system, lymphatic system, circulatory system, bones and joints. There are two (2) types of TB: latent TB (positive skin test with no symptoms) and active TB. The fundamental difference between latent TB and active TB is that active TB is contagious and latent TB is not.

> 12.  The standard method for identifying a TB infection involves a simple skin test. The medical staff at Elmore performs the TB skin test by injecting tuberculin into the inner surface of the inmate's forearm. Tuberculin is a mix of purified proteins produced from dead TB bacteria which means the administration of a TB skin test will not infect an individual with TB or any other disease or virus. After the medical staff administers a TB skin test, the staff "reads" the injection site 48-72 hours later to determine if the TB skin test is positive or negative. If an inmate has been exposed to the TB bacteria, the inmate will have a reddened induration,

or occasional blistering, on the forearm where the test was given. Whether a test is considered positive depends on the inmate's risk factors. For example, a reaction resulting in a raised area of five (5) millimeters or more is generally considered a positive test for an HIV-infected inmate or an inmate whose immune system is suppressed. A reaction of ten (10) or more millimeters is considered a positive test in all inmates regardless of the inmate's risk factors.

13.     The medical staff follows this same procedure regardless of whether the inmate claims he tested positive in the past. This is because the medical staff must verify whether an inmate has been exposed to TB before releasing the inmate to the general population where he may expose other inmates. It is also not sufficient to perform a chest x-ray in place of a TB skin test because a chest x-ray generally only shows whether the inmate has active TB. The TB skin test, on the other hand, tests for exposure to TB, whether latent or active. Although latent TB is not contagious, it is important to know when an inmate is infected because it can lay dormant for years and become active at any time. When latent TB becomes active, it can take three or more weeks for the inmate to exhibit any signs or symptoms of the infection. During this time, the inmate may spread the infection to anyone around him. This can lead to an outbreak of TB among the entire prison population and the staff. Therefore, the medical staff at Elmore, like the medical staff at the other ADOC facilities, typically administers preventative TB treatment to all inmates with latent TB to prevent it from becoming active. The medical staff at Elmore generally treats inmates with latent TB with Isoniazid (INH) for a minimum of nine (9) months.

14.     If an inmate with latent TB states that he has already received treatment, the medical staff treats the inmate with INH until they can confirm that the inmate received and completed his previous treatment. If the medical staff cannot confirm that the inmate received and completed treatment, it will continue to administer the TB treatment to completion. If the medical staff confirms that the inmate received and completed treatment, the medical staff will immediately terminate the inmate's treatment regimen.

15.     With regard to Mr. Devine, Mr. Devine tested positive for TB as early as January 14, 2008. (ADOC008; 15). As indicated in the response to Mr. Devine's griev[a]nce dated December 18, 2011, Mr. Devine started INH treatment, but never completed this treatment regimen. (ADOC006).

16.     On November 18, 2011, Mr. Devine again tested positive for latent TB. (ADOC021). Following this positive test, a chest x-ray was conducted on November 18, 2011, and was negative for any abnormalities, confirming that Mr. Devine did not have active tuberculosis. (ADOC021). As a result of these tests, Mr. Devine was prescribed INH therapy by the interim site physician. (ADOC021). On December 9, 2011, Mr. Devine received an Order from the then-attending physician to receive INH therapy for a period of nine (9) months. (ADOC036). I was on maternity leave from my position at Elmore during the

15

time when this treatment regimen was ordered. However, upon my return to Elmore, I was aware of Mr. Devine's condition and agreed with the decision to proceed with INH therapy given his lab results, his history of tuberculosis as well as his other pulmonary conditions. (ADOC036).

17.     As indicated throughout the chronic care clinic notations relative to Mr. Devine, he has suffered from chronic obstructive pulmonary disease ("COPD") throughout his incarceration at Elmore. (ADOC023-31 ). COPD is a known risk factor for individuals with tuberculosis which can increase his risk for developing active tuberculosis. COPD can also be exacerbated by continuous cigarette smoking. Mr. Devine has indicated to the medical staff that he smokes as much as half a pack of cigarettes per day. (ADOC021 ).

18. Mr. Devine began the INH therapy on December 16, 2011. (ADOC075). Over the course of treatment, the medical staff routinely drew labs in order to evaluate how Mr. Devine was receiving and tolerating the INH therapy. (ADOC047-57). When Mr. Devine appeared at the chronic care clinic in February of 2012, he did not voice any complaints of any kind relative to his INH therapy. (ADOC030). On March 13, 2012, the medical staff undertook an additional TB screening with respect to Mr. Devine which measured his current weight and his other condition for any signs of development of TB. (ADOC022). When Mr. Devine appeared for another chronic care clinic held on May 24, 2012, he did not mention any complaints of any kind related to his INH therapy. (ADOC031 ).

19. As of September 4, 2012, Mr. Devine had completed his nine (9) month INH therapy regimen and all signs and symptoms and lab results indicated that his condition was well controlled as a result of completing the therapy. (ADOC032). Upon completion of the therapy, the medical staff completed all of the documentation necessary to report Mr. Devine's condition to the Alabama Department of Public Health, as required by Alabama law. (ADOC032-33).

*Doc. No. 22*, *Lampley-Copeland Affidavit, Exh. 1, Plaintiff's Medical Records*.

The evidentiary materials filed by Defendants address the allegations made by Plaintiff regarding his treatment following his positive test for TB. A review of these documents demonstrates that the affidavits submitted by Defendants are corroborated by the objective medical records compiled contemporaneously with the screening of Plaintiff and during the treatment provided to him after a skin test showed a positive reaction for exposure to tuberculosis. *Doc.  No. 22, Exh. 1, Plaintiff's Medical Records*.

Defendants' undisputed evidence reflects that precautionary measures were taken in accordance with the guidelines established by the contract medical provider to: (1) identify inmates with tuberculosis during their incarceration; (2) determine whether symptomatic inmates had contracted tuberculosis; (3) protect the inmate population from possible exposure to potential infectious diseases, including tuberculosis; and (4) ascertain whether inmates who came into contact with active tuberculosis had been exposed to the tuberculosis bacteria. *Doc. No. 22, Lampley-Copeland Affidavit*. The correctional defendants further affirm that all inmate medical care is provided by the prison contract health care provider, they are not involved with the diagnosis or treatment of any inmate, and they do not interfere with the treatment provided by the prison medical staff. The correctional defendants also deny personal knowledge of Plaintiff's medical condition or the medical treatment he received at the Elmore Correctional Facility or at any other ADOC facility. *Doc. No. 22, Daniels, Bolling, and McKee Affidavits*.

Here, Plaintiff has presented no evidence that the correctional defendants knew of specific facts from which an inference could be drawn that a substantial risk of harm existed to Plaintiff regarding the treatment decisions of medical personnel in response to Plaintiff's positive TB test, and that they actually drew this inference and thereafter ignored the risk. Nor has Plaintiff presented evidence which indicates the correctional defendants knew that the medical screening procedures or treatment provided to inmates, including Plaintiff, created a substantial risk to his health, and with this knowledge consciously disregarded such risk. *See Ivory v. Warden, Governor of Alabama*, 600 Fed. App'x 670, 677-78 (11th Cir. 2015). Plaintiff has, therefore, failed to establish the requisite element of subjective awareness by the correctional defendants, and they are entitled to summary judgment on this claim.

*ii. Respondeat Superior*

To the extent that Plaintiff seeks relief from Defendant Daniels in his capacity as Warden of the Elmore Correctional Facility in relation to the medical treatment provided to him by health care personnel, this claim entitles Plaintiff to no relief.

> The law does not impose upon correctional officials a duty to directly supervise health care personnel, to set treatment policy for the medical staff or to intervene in treatment decisions where they have no actual knowledge that intervention is necessary to prevent a constitutional wrong. *See Vinnedge v. Gibbs*, 550 F.2d 926 (4th Cir.1977) (a medical treatment claim cannot be brought against managing officers of a prison absent allegations that they were personally connected with the alleged denial of treatment). Moreover, "supervisory [correctional] officials are entitled to rely on medical judgments made by medical professionals responsible for prisoner care. *See, e.g., Durmer v. O'Carroll*, 991 F.2d 64, 69 (3rd Cir.1993); *White v. Farrier*, 849 F.2d 322, 327 (8th Cir.1988)." *Williams v. Limestone County, Ala.*, 198 Fed.Appx. 893, 897 (11th Cir.2006).

*Cameron v. Allen, et al*., 525 F.Supp.2d 1302, 1307 (M.D.Ala.2007).

Even assuming that Defendant Daniels exerted some authority over those persons responsible for the provision of medical treatment at the Elmore Correctional Facility, the law is well settled "that Government officials may not be held liable for the unconstitutional conduct of their subordinates under the theory of *respondeat superior* [or vicarious liability]... . *Robertson v. Sichel*, 127 U.S. 507, 515–516, 8 S.Ct. 1286, 3 L.Ed. 203 (1888) ('A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed by or under him, in the discharge of his official duties'). Because vicarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir.2003) ("[S]upervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability."); *Marsh v. Butler County*, 268 F.3d 1014, 1035 (11th

Cir.2001) (supervisory official "can have no *respondeat superior* liability for a section 1983 claim."); *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir.2003) (concluding supervisory officials are not liable on the basis of *respondeat superior* or vicarious liability); *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir.1999), *citing Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir.1994) (42 U.S.C. § 1983 does not allow a plaintiff to hold supervisory officials liable for the actions of their subordinates under either a theory of *respondeat superior* or vicarious liability). "Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677. Thus, liability for medical treatment provided to Plaintiff could attach to Defendant Daniels only if he "personally participate[d] in the alleged unconstitutional conduct or [if] there is a causal connection between [his] actions ... and the alleged constitutional deprivation." *Cottone*, 326 F.3d at 1360.

Plaintiff has not presented evidence sufficient to create a genuine issue of disputed fact with respect his claim of deliberate indifference by Defendant Daniels. Nothing before the court indicates that Defendant Daniels personally participated in or had any involvement, direct or otherwise, with the medical treatment or treatment decisions provided to Plaintiff; rather, it is undisputed that he did not participate in Plaintiff's treatment. The evidentiary materials before the court demonstrate that medical personnel made all decisions relative to the medical treatment provided to Plaintiff and that they treated him in accordance with their professional judgment upon assessment of his condition.

In light of the foregoing, Defendant Daniels is liable for decisions of the medical staff only if his actions bear a causal relationship to the purported violation of Plaintiff's constitutional rights. To establish the requisite causal connection and avoid entry of summary

judgment in favor of this defendant, Plaintiff must present sufficient evidence which would be admissible at trial of either "a history of widespread abuse [that] put[ ] [Defendant Daniels] on notice of the need to correct the alleged deprivation, and [he] fail[ed] to do so ..." or "a ... custom or policy [that] result[ed] in deliberate indifference to constitutional rights, or ... facts [that] support an inference that [Defendant Daniels] directed the [facility's health care staff] to act unlawfully, or knew that [the staff] would act unlawfully and failed to stop them from doing so." *Cottone*, 326 F.3d at 1360 (internal punctuation and citations omitted). A thorough review of the pleadings and evidentiary materials submitted demonstrates that Plaintiff has failed to meet this burden.

The record before the court contains no probative evidence to support an inference that Defendant Daniels directed medical personnel to act unlawfully or knew that they would act unlawfully and failed to stop such action. In addition, Plaintiff has presented no evidence of obvious, flagrant or rampant abuse of continuing duration in the face of which Defendant Daniels failed to take corrective action; instead, the medical records indicate that Plaintiff had continuous access to medical personnel and received treatment for his medical conditions throughout his incarceration at the Elmore Correctional Facility. Finally, the evidentiary materials submitted by the correctional defendants demonstrate that the challenged medical treatment did not occur pursuant to a policy enacted by Defendant Daniels. Thus, the required causal connection does not exist and liability under the custom or policy standard is not warranted. *Cf. Employment Div. v. Smith*, 494 U.S. 872, 877 (1990); *Turner v. Safely*, 482 U.S. 78 (1987).  Defendant Daniels is  entitled to summary judgment on this claim.  *Carter*, 352 F.3d at 1350.

*C.  Conspiracy*

Plaintiff contends that Defendants conspired to harm him. *Doc. No. 17, Attachment 1; Doc. No. 25.* To establish a § 1983 conspiracy, "a plaintiff must show among other things, that Defendants 'reached an understanding to violate [his] rights.'" *Rowe v. Fort Lauderdale*, 279 F.3d 1271, 1283 (11th Cir. 2002) (citation omitted) (brackets in original). This requires that Plaintiff provide more than a label or a conclusion. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiff cannot rely on subjective suspicions and unsupported speculation, but must provide sufficient facts to show that an agreement was made. *Id.* at 556.

Plaintiff's allegations fail to demonstrate that Defendants acted together to commit an illegal act against him or to deprive him of his rights. Plaintiff relies entirely on a conclusory allegation of a conspiracy. He alleges no facts suggesting a conspiracy or agreement other than contending that Defendants acted in concert to violate his constitutional rights. Such allegations do not allow the court to conclude that a conspiracy claim is plausible. *Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984) (holding that a conspiracy allegation that is vague and conclusory fails to state a claim upon which relief can be granted and is subject to dismissal). Even accepted as true, Plaintiff's allegations are insufficient to state a viable conspiracy claim under § 1983.

A separate judgment follows.

Done, this 23rd day of September, 2015.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE